**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GUADALUPE S.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 25 C 4238** |
| **v.** | ) | |
| | ) | **Magistrate Judge Gabriel A. Fuentes** |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**[2]

Before the Court is Guadalupe S.'s motion to reverse and remand the Administrative Law Judge's ("ALJ") decision denying her application for disability insurance benefits (D.E. 26) and Defendant's motion to affirm the ALJ's decision (D.E. 21).

## I. Procedural History

Plaintiff applied for disability insurance benefits on October 15, 2021, alleging a disability onset date of July 9, 2020. (R. 78.) After a hearing, the ALJ issued a written decision on September 22, 2023, denying Plaintiff's application and finding her not disabled under the Social Security Act (the "Act").[3] (R. 12-36.) This appeal followed.

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] On September 16, 2026, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned the undersigned magistrate judge for exercise of full jurisdiction. (D.E. 23.)

[3] The Appeals Council on February 11, 2025, denied review of the opinion (R. 1-6), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

## II. The ALJ Decision

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of July 9, 2020, and that Plaintiff met the insured status requirements of the Act through December 31, 2025. (R. 17.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of sacroiliitis, spondylosis/degenerative disc disease, and obesity. (*Id.*) At Step Three, the ALJ concluded that Plaintiff's impairments, alone or in combination, did not meet or medically equal the severity of one of the SSA's listed impairments. (R. 18, 20-21.) The ALJ applied the paragraph B criteria to Plaintiff's mental impairments (anxiety disorder and depressive disorder) and found that these disorders "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities" and therefore were "nonsevere." (*Id.*) The ALJ found that Plaintiff had no limitation in the areas of understanding, remembering or applying information; in interacting with others; in concentrating, persisting or maintaining pace; and in adapting or managing herself. (R. 18-20). Next, the ALJ, in considering all of Plaintiff's symptoms including complaints of arthritic low back pain, assigned Plaintiff a residual functional capacity ("RFC") as follows:

> [Claimant can] perform sedentary work as defined in 20 CFR 404.1567(a). She can never climb ladders, ropes or scaffolds, no more than frequently balance, and no more than occasionally climb ramps or stairs, stoop, crouch, kneel, and crawl. She must avoid concentrated exposure to extreme cold. She must be provided a sit stand option allowing the claimant to stand 1-2 minutes after sitting for one hour.

(R. 23-24.) At Step Four, the ALJ found that Plaintiff had past relevant work as a housekeeper but was unable to perform it as actually or generally performed in the economy. (R. 30). But at Step Five, the ALJ determined that based on the vocational expert testimony, and the claimant's age, education, work experience, and residual functional capacity, there were jobs in the national

economy that Plaintiff could perform, namely charge account clerk (DOT#205.367-014 – citing 34,000 jobs nationally); circuit board tester (DOT#726.684-110 – citing 117,000 jobs nationally); and eye glass assembler (DOT#713.684-038 – citing 103,000 jobs nationally). (R. 31.) Thus the ALJ found Plaintiff not disabled. (R. 32.)

## III. Legal Standard

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id.* at 1054.

The Seventh Circuit has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

## IV. Analysis

Plaintiff makes three arguments for remand: (1) that the ALJ failed to explain adequately how she weighed the evidence as to her evaluation of the opinions of Plaintiff's treating physician, Dr. Mathew, rendering the ALJ's decision legally insufficient; (2) that substantial evidence did not support the ALJ's RFC assessment because the ALJ failed to explain her conclusions as required by 20 C.F.R. §404.1545 and SSR 96-8p; and (3) that the ALJ's analysis of Plaintiff's subjective statements was legally insufficient because she failed to explain how she weighed the relevant regulatory factors, as required by 20 C.F.R. § 404.1529 and SSR 16-3p. (Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security ("Br."; D.E. 27) at 2, 9, 12.) All three of these arguments run headlong into the above-described "minimal articulation" requirement that applies the substantial evidence rule to require only that the ALJ provide an explanation sufficient to allow a reviewing court to see how the evidence leads to the ALJ's conclusion, to assess the validity of the agency's findings, and to afford the claimant meaningful review on appeal. *Warnell*, 97 F.4th at 1054. All three of Plaintiff's arguments, which at times repeat themselves, fail because the ALJ is subject only to the foregoing "minimal articulation" requirement to connect the conclusions to the evidence, and not to the type of exhaustive standard to which Plaintiff seeks to hold the ALJ on this appeal.

### A. The ALJ's Evaluation of the Medical Opinion Evidence from Plaintiff's Treating Physician Was Supported by Substantial Evidence.

In her memorandum, Plaintiff contends the ALJ failed to explain sufficiently her reasoning behind finding Dr. Mathew's opinions unpersuasive and failed to acknowledge findings that would support Dr. Mathew's opinions (Br. at 3-9, Reply at 3.) As Plaintiff's brief accurately summarized the record, Dr. Mathew, Plaintiff's treating physician, indicated several limitations in Plaintiff's residual functional capacity, but the ALJ accepted only some, but not all of them. (Br. at 3-5.) For

example, Dr. Mathew's limits of never climbing ladders, crouching or squatting, and only rarely climbing stairs, stooping, bending, and twisting, were contained within the RFC, but the limitations (per Dr. Mathew) that the ALJ rejected included sitting or standing only for 15 minutes at one time; sitting less than two hours total in an eight-hour workday; needing a job that would permit her to shift positions at will between sitting, standing, and walking; and needing breaks every four hours for five to ten minutes, to allow her to sit, quietly. (R. 772.) Plaintiff's attack on the ALJ's evaluation of Dr. Mathew's analysis largely claims that the ALJ mischaracterized record evidence she saw as inconsistent with Dr. Mathew's limitations. (Br. at 4.) But Plaintiff's argument sells the ALJ's opinion considerably short, failing to account for the ALJ's sufficiently searching review of the full medical record.

More specifically, Plaintiff referred to the ALJ's characterization of the treatment notes in the file as showing only lumbar spine tenderness and decreased range of motion, with essentially "baseline" examinations, a normal gait and intact motor strength and no focal deficits, (*id.* at 3, citing R. 30), whereas the record included evidence that Plaintiff experienced:

- tenderness in her sacroiliac joints (*id.* at 3-4, citing R. 455; 468; 488; 493; 502; 752; 765);
- tenderness and reduced range of motion in her cervical spine (*id.*, at 4, citing R. 764);
- reduced reflexes in her biceps (*id.*, citing R. 765);
- signs of degenerative disc disease (*id.,* citing R. 457, 831); and
- the following symptomology that Plaintiff recited in considerable detail (Br. at 3-4):

> She had positive provocative tests of her sacroiliac joint, including sacral compression tests, FABER tests, and thigh thrust tests. (R. 468; 502; 512.) Plaintiff also had tenderness and reduced range of motion in her cervical spine, more recently. (R. 764.) She had reduced reflexes in her biceps. (AR 765.) Imaging showed increasing disc space loss at L5-S1, consistent with advancing degenerative disc disease and bilateral facet hypertrophic changes at L5 S1. (R. 456.) An MRI the following month showed modic type I degenerative marrow endplate changes at L5-S1 which had progressed; moderate disc narrowing at L5-S1; increased fluid

> within the L5-S1 intervertebral disc likely representing advanced degenerative disc disease; new presacral edema; left foraminal disc protrusion at L2-3; disc bulge with bilateral foraminal narrowing at L3-4; disc bulge, ligamentum flavum infolding, central canal narrowing, and bilateral foraminal narrowing at L4-5; and disc bulge, ligamentum flavum infolding, and moderate bilateral foraminal narrowing, at L5-S1. The findings at L5-S1 were most compatible with modic type I degenerative marrow endplate changes with advanced degenerative disc disease. (R. 457.) In May 2021, [X]-rays of Plaintiff's hips and pelvis showed osteophytic ridging/bone spur along the superolateral aspect of the right acetabulum and pelvic phlebolith in the left hemipelvis. (R. 455.) In April 2023, an MRI of Plaintiff sacroiliac joints showed a few areas of periarticular edema-like marrow signal possibly reflecting subtle reactive marrow change; preferential marrow signal alteration about L5-S1 which were deemed to probably reflect degenerative modic endplate changes in the setting of advanced degenerative disc disease. (R. 831.) Imaging of Plaintiff's cervical spine showed loss of normal cervical lordosis with reversal at C5-6, where there was disc space narrowing and endplate sclerosis. (R. 765.)

To hear Plaintiff tell it, then, one might believe the ALJ cursorily dismissed Dr. Mathew's recommended limitations without evaluating any of the above aspects of the medical record. But to the contrary, the ALJ's discussion of Plaintiff's medical records showed that the ALJ did not ignore or cherry-pick evidence and confirmed the ALJ's assertion that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p" and undertook a "careful consideration of the evidence" in the full medical record. (R. 23, 24.) First, the ALJ discussed her findings that based on the medical record:

> [T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; *however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision*. As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the record has shown essentially baseline examinations and conservative treatment for low back pain. …. The record shows that the claimant had bilateral L5-S1 lumbar facet injections on February 1, 2021 and reported 60-70% relief (Exhibit 4F, p. 9). The claimant was evaluated by rheumatology in May 2021 with examination *showing a normal gait* and station, no cyanosis, no clubbing, no edema, no synovitis, *and full range of motion in the joints* …. Examinations with

> orthopedist Dr. Brian Steinke in August and September 2021 showed complaints of low back pain and buttock pain, right greater than left. The claimant said that her pain was worse while standing or leaning and said that her pain had not significantly changed after 12 weeks of physical therapy. *She demonstrated a normal gait and was able to perform toe walking, heel walking, and tandem gait normally. There was no tenderness to palpation and the lumbar spine had normal and pain free range of motion ….* Dr. Steinke's assessment was for chronic right sided low back pain without sciatica and lumbar degenerative disc disease. The claimant was referred to physiatry for evaluation and treatment (Exhibit 4F, pp. 40-46).

(R. 24-25 (emphasis added).) Then, the ALJ added detail to the basis for the findings the Court emphasized above in italics, turning to Dr. Mathew's proposed limitations and the lengthy medical record that Plaintiff claims the ALJ had overlooked, including Plaintiff's issues with sacroiliitis:

> An MRI of the lumbar spine in September 2021 revealed multilevel degenerative changes. Degenerative changes at L5-S1 resulted in moderate bilateral foraminal narrowing and assessed as most compatible with Modic type 1 degenerative marrow endplate change with advanced degenerative disc disease. However, early/developing spondylodiscitis at L5-S1 was not entirely excluded (Exhibit 3F, pp. 28-29). *The claimant was assessed with sacroiliitis, chronic right sided low back pain without sciatica, lumbar degenerative disc disease, and lumbar spondylosis* (Exhibit 3F, pp. 30, 17). The claimant was evaluated by pain management physician Dr. Mathew in September 2021 and complained of a 20-year history of right sided low back and right groin pain, which flared in March 2020 with no new known injury. She reported no improvement with recent physical therapy, a Medrol Dosepak, and tramadol (Exhibit 3F, p. 24). *Exam showed normal lumbar spine alignment, a normal gait, and intact coordination. There was tenderness on palpation which was moderate in the right sacroiliac joint. Lumbar range of motion was limited with pain on flexion to 45 degrees and pain on extension 20 degrees.* Straight leg raise was negative. Provocative maneuvers for the SI joint pain showed positive Faber and positive thigh thrust test. Strength testing was normal and pain free. Sensation was normal to light touch over all dermatomes and reflexes were 2+ and symmetric (Exhibit 3F, p 27). At a follow up in November 2021, *the doctor noted that the MRI of the lumbar spine did not demonstrate severe spinal canal stenosis or large disc herniation and that laboratory workup ruled out infection or discitis. Overall, the claimant's evaluation was consistent with sacroiliitis and a right SI joint injection weas [sic] performed on October 20, 2021 (Exhibit 4F, p. 15). Examination continued to show a normal gait and coordination, negative straight leg raise, and tenderness with reduced range of motion of the lumbar spine* (Exhibit 4F, p. 17). The claimant underwent bilateral L5-S1 lumbar facet joint injections again in December 2021 (Exhibit 3F, p. 18). Dr. Mathew noted that she had responded well to the facet injections but continued to report pain. Thus, she was advised to restart physical therapy, modify her activities, and focus on weight loss with a healthy diet and home exercise

> program (Exhibit 4F, p. 12). The claimant returned to PCP Dr. Bielat in March 2022 and reported that she did not feel improvement in her lower back pain and that she had been advised to follow up with her primary doctor for possible abdominal pathology. *The claimant also requested the doctor complete disability papers and Dr. Bielat noted that she was not sure if the claimant qualified for permanent disability at this time* …. Strength testing was normal (Exhibit 8F, p. 46). As the claimant reported temporary relief from facet joint injections with cortisone, Dr. Mathew felt that she would benefit from medial branch blocks targeting the L5-S1 facet joints followed by radiofrequency ablation (Exhibit 8F, p. 47). The claimant proceed[ed] with this treatment in April, May, November, and December of 2022 (Exhibits 8F, pp. 48-52, 10F, pp. 181, 188, 235, 244). At a follow up with Dr. Mathew in February 2023, *the claimant reported that her low back pain was manageable* but noted new onset of posterior neck pain with no radiation down the arms (Exhibit 8F, p. 54). She denied any weakness or gait imbalance (Exhibit 8F, p. 54). *Examination showed a normal gait and posture with some tenderness in the paraspinals*. The neck range of motion was limited on flexion (Exhibit 8F, p 56). The lumbar spine remained essentially unchanged (Exhibit 8F, p. 57) …. Recent progress notes with Dr. Bielat in May 2023 show no abnormal findings and continued to note a normal gait with no focal deficits (Exhibit 10F, p. 12). *An updated MRI of the sacroiliac joints showed no evidence for substantial active sacroiliitis* (Exhibit 10F, p. 58) …. The undersigned is persuaded that the claimant's lumbar spine/musculoskeletal impairment compounded by obesity *would limit her to a reduced range of sedentary work* …. The claimant testified to having low back pain to the middle of the back …. Additionally, *examinations have remained essentially baseline and have shown a normal gait with lumbar spine tenderness and reduced range of motion but intact motor strength and no focal deficits* (Exhibits 2F, p. 1, 3F, p. 27, 4F, pp. 17, 40-46, 8F, pp. 46, 56-57, 10F, p. 12).

(R. 25-27 (emphasis added).) The last sentence in the foregoing passage in the ALJ's decision is significant because it is the line that Plaintiff uses to paraphrase the ALJ's entire treatment of Dr. Mathew's assessment of Plaintiff's limitations. Not only has Plaintiff incompletely described the ALJ's analysis, but Plaintiff also did not mention the ALJ's citations to Exhibits 2F, 3F, 4F, 8F and 10F (which the Court reviewed independently), and these exhibits support the ALJ's thorough discussion of the treatment notes that the ALJ found did not support Dr. Mathew's limitations above those in the RFC.

Plaintiff obviously disagrees with how the ALJ did not place more weight in Dr. Mathew's additional limitations. But the Court cannot agree with Plaintiff that the ALJ cherry-picked the

record to discount Dr. Mathew's opinion. The ALJ instead took full account of the record, which adequately supported the ALJ's RFC. Plaintiff's disagreement with the RFC adds up to little more than an attempt to have the Court reweigh Dr. Mathew's opinion. The Court does not do so in a Social Security benefits denial appeal. *Chavez*, 96 F.4th at 1021.

Plaintiff's quarrels with the ALJ's rejection of Dr. Mathew's opinion that Plaintiff needed "four or more" days off a month due to her issues with concentration and attention, (Br. at 7-8), fare no better. Plaintiff complains that the ALJ erred by finding Dr. Mathew's opinion unsupported by his treatment notes when, according to Plaintiff, the doctor did refer to his treatment notes in his questionnaire. (*Id.* at 8, citing R. 30, 771.) The ALJ wrote that Dr. Mathew "does not refer to specific treatment notes to support these limitations including that the claimant would have problems with attention and concentration, which is inconsistent with the claimant's ability to be at appointments alone with no indication of her needing assistance and no evidence of concern regarding an inability to understand, remember, apply information, concentrate, persist, or maintain pace in order to follow appointments schedules, treatment recommendations, or take her medications appropriately." (R. 30.) The Court reviewed the questionnaire cited by Plaintiff (R. 771), and on that page, the doctor did indeed refer to a specific portion of his treatment notes, but those notes from February 2023 concerned Plaintiff's lumbar back pain and range of motion; they do not support any aspect of Plaintiff's claim for disability based on the Paragraph B criteria, or Plaintiff having frequent "bad days." Moreover, the ALJ specifically considered those treatment notes elsewhere in the opinion, saying this about them:

> At a follow up with Dr. Mathew in February 2023, the claimant reported that her low back pain was manageable but noted new onset of posterior neck pain with no radiation down the arms (Exhibit 8F, p. 54). She denied any weakness or gait imbalance (Exhibit 8F, p. 54). Examination showed a normal gait and posture with some tenderness in the paraspinals. The neck range of motion was limited on flexion (Exhibit 8F, p 56). The lumbar spine remained essentially unchanged

> (Exhibit 8F, p. 57). As the claimant's chronic low back pain had improved but not resolved with radiofrequency ablation, the claimant was advised to continue core stabilization exercises and to take medication for flareups and focus on weight loss (Exhibit 8F, p. 59).

(R. 25-26.)

Nor did the ALJ err, as Plaintiff contends, (Br. at 6-7), by considering Plaintiff's positive response to ablation therapy in February 2023 (R. 25-26), as support for the ALJ's RFC. The ALJ did not, as Plaintiff argues, substitute her judgment for that of the treating physician, but rather cited evidence in the record that supported her conclusion. The ALJ placed less weight on the treating physician based on the physician's own treating notes from February 2023. Plaintiff does not establish that the ALJ insufficiently discussed the supportability and consistency of Dr. Mathew's opinion with the rest of the record; and the ALJ sufficiently discussed why she concluded that the intensity and the extent of Dr. Mathew's proposed limitations were inconsistent with the intensity and extent of Plaintiff's overall symptoms as reported in the medical record. The ALJ's treatment of Dr. Mathew's opinion did not run afoul of 20 C.F.R. § 404.1520c.

**B. The RFC's Inclusion of a "Sit Stand" Option Was Not Reversible Error.**

Plaintiff's argument that the RFC was not supported by substantial evidence because the state agency physicians recommended only light work and because the RFC's limitation of a "sit stand option allowing the claimant to stand 1-2 minutes after sitting for one hour" was inconsistent with aspects of Dr. Mathew's opinions do not prevail. These arguments are largely a rehash of Plaintiff's disagreement with how the ALJ's rejection of Dr. Mathew's more significant limitations on Plaintiff's activities. For example, Plaintiff argues that "the ALJ offered no explanation about why she still concluded Plaintiff could manage to sit for six hours in an eight-hour workday," (Br. at 10), but to the contrary as noted above in Part IV(A), the ALJ extensively reviewed the course of Plaintiff's symptomology, treatment, and response to treatment over a three-year period as

documented in the medical records, which concluded with the February 2023 treatment notes stating that Plaintiff considered her back pain to be manageable, that her gait was normal, and that her low back pain had "improved but not resolved." (R. 25-26.) As for the "sit stand" option, The ALJ added it to the RFC to account for how, according to the ALJ, "prolonged sitting can aggravate back pain/discomfort." (R. 30.) The ALJ's imposition of an additional limitation in the RFC is not a basis for reversal or for a conclusion that the RFC was not supported by substantial evidence. To the contrary, the fact that the ALJ's "RFC determination was more restrictive than what any state agency physician recommended," further "demonstrat[es] the ALJ's careful deliberation" in formulating the RFC. *Padua v. Bisignano*, 145 F.4th 784, 792 (7th Cir. 2025). Plaintiff's underlying argument is that the RFC as a whole, in allowing sedentary work that did not contain the full range of Dr. Mathew's proposed limitations, is not supported by substantial evidence because Plaintiff wanted the ALJ to place more weight in Dr. Mathew's opinion. As explained above, the Court does not reweigh evidence or substitute its judgment for the ALJ's determination, which in this case was based on substantial evidence, as shown by the ALJ's detailed and extensive discussion about why the full record did not support the intensity and extent of those proposed limitations.

### C. The ALJ's Treatment of Plaintiff's Subjective Statements Was Not Reversible Error.

Plaintiff's disagreement with the ALJ's treatment of Plaintiff's subjective statements is the same argument Plaintiff makes yet a third time: That the ALJ, in finding those statements inconsistent with or unsupported by the medical record evidence, overlooked or mischaracterized the extent of the objective evidence supporting Plaintiff's reports of extensive symptoms and limitations from lower back pain and anxiety issues. That medical record evidence, Plaintiff says, "showed more abnormalities than lumbar spine tenderness and decreased range of motion." (Br.

at 12.) Plaintiff cites, in support of that argument, the very same portions of the record that she argued the ALJ failed to account for in considering Dr. Mathew's opinion. (*Id.*, citing R. 455; 456; 457; 468; 488; 493; 502; 512; 752; 764-65; 831.) Again, an ALJ need not address every piece or category of evidence identified by a claimant so long as the ALJ supported their conclusions with substantial evidence.

Moreover, "[w]e will overturn the ALJ's evaluation of a claimant's subjective symptoms only if it is patently wrong, which means that the decision lacks any explanation or support." *Pufahl v. Bisignano*, 142 F.4th 446, 458 (7th Cir. 2025), internal quotations omitted. Here, the ALJ determined that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms [] are inconsistent because the record has shown essentially baseline examinations and conservative treatment for low back pain," and the ALJ cited substantial record evidence in support of this determination. The ALJ's characterization of Plaintiff's treatment as conservative was based on a thorough analysis of the medical record, including, as Plaintiff notes, that she "was prescribed pain medication; underwent several weeks of physical therapy; underwent injections and radiofrequency ablation; consulted multiple specialists including a physiatrist, her primary care doctor, a rheumatologist, and an orthopedic specialist; underwent various imaging and testing, including numerous bloodwork all in an attempt to receive some relief from her pain." (Br. at 14.) The ALJ's assessment of that course of treatment, as established by the record, represented substantial evidence in support of the ALJ's conclusions as to the RFC.

Likewise, the ALJ's determination that Plaintiff's symptoms improved with treatment was based on substantial evidence. The ALJ determined that while the record established that Plaintiff did have lower back pain, the record from February 2023 indicated that she considered it manageable and that it had improved with treatment but not resolved. Referring to Plaintiff's

partial improvement with ablation treatment, (Br. at 14), Plaintiff may well be correct that her "moderate improvement from radiofrequency ablation" treatment "did not inherently undermine Plaintiff's statements." But as the Court has concluded, the improvement on ablation was just one part of a much more sweeping mosaic of records from 2021 to 2023, and that mosaic as a whole supported the RFC. The ALJ's view that the improvement on ablation therapy, when coupled with the record as a whole, supported the RFC and not the full extent of Dr. Mathew's proposed further limitations, was supported by substantial evidence, as was the RFC. The Court finds that the ALJ adequately explained the decision to discount Plaintiff's credibility with the aforementioned "specific reasons supported by the record." *Pufahl*, 142 F.4th at 458.

Again, under the applicable case law, the ALJ need not discuss every piece of evidence, or every item in the record, in support of the needed logical bridge between the record evidence and the ALJ's conclusions. And for all of the foregoing reasons, the ALJ's analysis and discussion of the medical record evidence was sufficient to establish that her RFC was supported by substantial evidence so that no reversible error occurred here, much as Plaintiff would prefer that the ALJ and the Court weigh the record differently.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion (D.E. 26, 27) seeking to reverse and remand the ALJ's decision (D.E. 8) and grants Defendant's motion to affirm (D.E. 21).

**SO ORDERED.**

**ENTER:**

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: September 30, 2026**